**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**City of Cleveland,**

        **Plaintiff,**                    **Case No. 2:04-CV-805**
                                         **JUDGE GREGORY L. FROST**
    **v.**                                 **Magistrate Judge Kemp**

**State of Ohio and Ohio Department**
    **of Transportation,**

        **Defendants and Third Party Plaintiffs,**

    **v.**

**The Federal Highway Administration,**

        **Third Party Defendant.**

## OPINION & ORDER

This case poses the issue of whether Defendant Federal Highway Administration ("FHWA" or "Administration") acted in an arbitrary and capricious manner by withdrawing federal funds that were to be used to complete Plaintiff City of Cleveland's ("City" or "Cleveland") Kinsman Road enhancement project. After carefully considering the administrative record and the parties' cross motions for summary judgment, the Court concludes that the FHWA's motion (Doc. # 16) is well taken and that the City's motion is not well taken (Doc. # 18).[1]

---

[1] The parties informed the Court via telephone on April 8, 2005 that they agreed that the City could file its cross motion for summary judgment as well as its reply on April 30, 2005 instead of April 21, 2005 as the Federal and Local Rules of Civil Procedure required. Thus, the Court will treat those filings as timely.

1

## BACKGROUND

The Court shall begin by providing a thorough but brief overview of the federal funding process at issue.  Such a review is necessary in light of the Court's subsequent discussion of whether the Defendants State of Ohio ("Ohio") and the Ohio Department of Transportation ("ODOT") have standing to assert claims against Third Party Defendant FHWA.  Thereafter, the Court will review the specific project involved in this instance before providing a general procedural background.

### A. FEDERAL FUNDING FOR STATE AND LOCAL TRANSPORTATION PROJECTS

The genesis for the case at bar is a City construction project designed to enhance the streetscape of Kinsman Road in Cleveland.  The City procured the funds necessary to complete that project from the Federal-Aid Highway Program ("Program") under the Federal-Aid Highway Act ("FHA"), 23 U.S.C. § 101, *et. seq*.  The FHWA is the agency within the United States Department of Transportation ("DOT") charged with administering the Program.  *See* 49 U.S.C. § 104(a); 49 C.F.R. § 1.48(b).

The Program provides states with federal funding for various transportation, construction, and improvement projects.  The Surface Transportation Program ("STP") is a subprogram of the Program.  23 U.S.C. § 133.  The STP establishes fourteen (14) categories of projects eligible for federal funds under the Program, one of which is "transportation enhancement activities."  23 U.S.C. § 133(8).  That category includes scenic beautification and landscaping enhancements as well as the creation of facilities for pedestrians and bicycles.  23 U.S.C. § 101(a)(35).  The Kinsman Road project falls into that category; thus, the STP is the subprogram that FHWA utilized to provide the funds in the case at bar.  (Doc. # 16 at 3).

2

The State is eligible for federal funding under the Program because it maintains ODOT, which is capable of carrying out duties required by law to administer the Program. 23 U.S.C. § 302; O.R.C. § 5501.03. Ohio took advantage of its eligibility by entering into a Memorandum of Agreement ("Memorandum") with FHWA's Ohio Division that details "the extent to which ODOT has assumed the responsibilities of the Secretary [of Transportation]." (Doc. # 16 at 4; AR 105-114). Regardless of the Memorandum, the FHWA remains responsible for ensuring compliance with Federal requirements under the Program. 49 C.F.R. § 1.48(b); 23 C.F.R. § § 1.36 & 635.110; (AR 105).

Under the Memorandum and pertinent statutes and regulations, the FHWA provides the funding, guidance, and technical assistance to ODOT relative to transportation construction projects. In turn, ODOT may delegate primary responsibility for project administration of local transportation projects to Local Public Agencies ("LPAs") such as the City. 23 C.F.R. 635.105(a); (AR 102-104). Such delegation, however, does not relieve ODOT of its responsibility for the construction and completion of federal aid projects. *Id.*; (AR 105-114).

## B.      CLEVELAND'S LEWIS LAW

On June 10, 2003, Cleveland enacted the Fannie M. Lewis Cleveland Resident Employment Law ("Lewis Law" or "Ordinance"), Cleveland, Ohio, Codified Ordinances Chapter 188, Ordinance 2031-A-02 (June 10, 2003). (AR 21-25).[2] The Lewis Law became effective on January 1, 2004. *Id.* The purpose of the measure was to "alleviate the lack of use of Residents on City of Cleveland construction projects found to exist by the Council of the City of

---

[2] "AR" denotes Administrative Record.

Cleveland."   CCO § 188.07.  To that end, the pertinent portion of the ordinance provides:

> Where not otherwise prohibited by federal, state or local law or the terms of federal or state grants, all Construction Contracts shall contain a provision that requires that Residents of the City perform twenty percent (20%) of the total Construction Worker Hours ("Resident Construction Worker Hours") and shall contain a provision detailing the penalties for failure to do so, which penalties are set forth in Section 188.05. Additionally, where not otherwise prohibited by federal, state, or local law or the terms of the federal or state grants, all Construction Contracts shall contain a provision that requires the Contractor to use significant effort, and requires any Subcontractors to use significant effort, to ensure that no less than four percent (4%) of the Resident Construction Worker Hours are performed by persons who qualify as Low Income Persons....

CCO § 188.02.  The measure defines "Construction Contracts" broadly to include "any agreement whereby the City either grants a privilege or is committed to expend or does expend its funds or other resources, or federal grant opportunities, . . . in an amount of $100,000 or more, for the . . .  rehabilitation, improvement, alteration , . . . to real property."  CCO § 188.01(b). "Residents of the City" means "persons domiciled within the boundaries of City of Cleveland." CCO § 118.01(g).  "Construction Worker Hours" are defined as "the total hours worked on a Construction Contract by Skilled and Unskilled Construction Trade Workers whether those workers are employed by the Contractor or Subcontractor," excluding "the number of hours of work performed by non-Ohio residents."  *Id.* at § 188.01(c).  Given that definition, a Contractor may elect to use a workforce comprised entirely of out-of-state residents in order to avoid the Lewis Law's requirements.  However, should the Contractor elect to utilize any Ohio workers, the Ordinance would require at least twenty (20) percent of those workers to be Cleveland residents. (Doc. # 18 at 3).

In addition, the Lewis Law provides that "Low Income Persons" means "a Resident who is a member of a family having an income equal to or less than the Section 8 very low income

4

limit established by the Department of Housing and Urban Development." *Id.* at § 188.01(f). Lastly, "Very Low Income Families" are defined as "families whose incomes do not exceed fifty percent (50%) of the median family income for the area." *Id.*

In order to ensure compliance with the ordinance's mandates, Contractors are required to complete a detailed workforce table estimating the work force requirements for a project and to report on a monthly basis the actual residence of each employee on its payroll. CCO § § 188.02(c); 188.04(c). Moreover, the Director may not waive the measure's Resident Construction Worker hours requirement. CCO § 188.03(d). Instead, the Director may, prior to or during construction, elect to reduce the minimum percentage of resident employment required by the Ordinance if (1) the Contractor can establish the "high impracticality" of complying with the twenty (20) percent mandate and (2) the Director finds that the contractor has made "efforts to the greatest extent feasible" to meet the minimum requirement. CCO § 188.03(b).

The Lewis Law provides that the Contractor's good faith efforts to comply with the resident labor requirements fail to suffice for actual compliance. CCO § 188.05(a). Furthermore, the Ordinance sets forth penalties for non-compliance. Specifically, the measure states that when the Director of the City's Office of Equal Opportunity determines that the Contractor has failed to fulfill the requirements in the above-quoted section:

> (b) One eighth (1/8) of one (1) percent of the final total amount of the Construction Contract shall be paid by the Contractor to the City in payment for each percentage of shortfall toward the Resident Construction Worker Hours set forth in Section 188.03. In the event the Low Income Person objective is not achieved, the Director shall determine if the penalty is appropriate and assess the penalty in his/her discretion.

> (f) the imposition of any penalty or fine under this section shall not

5

preclude the City from exercising any other rights or remedies to which it is entitled.

(h) In addition to assessing the penalty set forth above, the City may, for a period of five (5) years after a violation of this chapter, required the Contractor to pose a surety bond or other appropriate security in an amount representing twenty percent (20%) of the contract price for any subsequent contract awarded to the Contractor, which the Contractor shall agree and shall be required to forfeit in its entirely in the event that full compliance with the requirements of this chapter are not achieved during the performance of the contract.  This surety bond shall be in addition to such other surety bonds that are required pursuant to the Codified Ordinances of Cleveland, Ohio.

CCO § 188.05.

## C.      THE KINSMAN ROAD PROJECT

Cleveland wanted to resurface Kinsman Road and to make improvements to the streetscape around that same road.  Accordingly, Cleveland passed an Ordinance on November 25, 2002 authorizing the City's Director of Public Service to apply for and accept an ODOT-administered grant of Program funds for the portion of the project pertaining to the streetscape enhancements.[3]  Cleveland, Ohio, Ordinance 1530-02 (November 25, 2002); (AR 543).  The enhancements included the provision of trees, implementation of a brick sidewalk, and the insertion of light poles along the road.  (AR 1584, 1559, 1665).

In October 2003, the City sent ODOT a complete copy of the bid package for the Kinsman Road project that included the Lewis Law language.  (AR 849, 863-866).  In December 2003, the City and ODOT entered into an LPA Federal Project Agreement ("Agreement") to

_____

[3] Funding for the Kinsman Road resurfacing project is not at issue in this decision.  (Doc. # 1 at ¶ ¶ 4, 20, B, D; Doc. # 16 at 8 n.5).

provide the federal funding for the enhancements under the STP.  (AR 735-746).  Pursuant to that agreement, Cleveland was designated the LPA to administer construction.  *Id*; *see also* 23 C.F.R. § 635.102.  The Agreement outlined the conditions attached to the federal funds and set forth the City's responsibilities as the LPA for the project.  Furthermore, the Agreement noted that Cleveland was obligated to comply "with all applicable Federal and State laws, regulations, executive orders, and applicable ODOT manuals and guidelines."  (AR 735-736).  In turn, ODOT was required to pay Cleveland–from federal funds via the STP–the eligible costs for the Kinsman Road enhancement Project at a rate of eighty (80) percent, up to a maximum of $696,000.  (AR 736, 1553).  The total estimated cost for the Kinsman Road enhancement project was $870,000, with Cleveland paying the remaining $174,000.  (AR 736, 1599).

On February 3, 2004, Gary Benesh, the LPA coordinator for ODOT, informed Mark Ricchiuto, Cleveland's Director of Public Service, that failure to remove the Lewis Law's requirements from the bid specifications would result in the withdrawal of federal funds for the project because the Lewis Law violated 23 C.F.R. § 635.117(b).  (AR 97).  That regulation essentially prohibits geographical or residency restrictions which tend to restrain competition from being included in LPA contracts.  *Id.*  Three days later, ODOT sent the City a letter stating that the City must remove the Lewis Law language from the bid packet for that same reason. (AR 96).  The letter informed the City that failure to remove the Lewis Law portion of the bid packet would result in the loss of federal funds for the project.  *Id.*  Cleveland removed the Lewis Law's provisions from the bid specifications.  (AR 281-687).

Contractors placed their bids with Cleveland on February 26, 2004.  (AR 279). Cleveland identified Perk Company ("Perk") as the lowest bidder on March 24, 2004.  *Id.*

7

Subsequently, on May 25, 2004, Perk and the City entered into the Kinsman Road enhancement contract.  (AR 204).  Although the bid specifications were devoid of reference to the Lewis Law, the contract between Perk and the City included the Lewis Law provisions.  (AR 54; 237-241). Consequently, the FHWA informed ODOT on July 12, 2004 that the Kinsman Road enhancement project was no longer eligible for funding under the Program.  (AR 7).  Four days later, ODOT notified the City that it was withdrawing the federal funds for the project.  (AR 5). On August 3, 2004, the FHWA formally withdrew the approval of federal funding from the project.  (AR 141).

## D.   THE CURRENT ACTION

On March 26, 2004, before entering into its contract with Perk, the City sued the State and ODOT in the Franklin County, Ohio Court of Common Pleas.  (Amended Cmpl.; AR 204). The City's Amended Complaint seeks only declaratory and injunctive relief against the State and ODOT.  *Id.*  Specifically, the City wants the Court to

> determine and declare the rights and duties of the parties under the Federal Agreement; specifically that including the requirements imposed by the Lewis Law in any construction contracts relating to the Kinsman Road project . . . would not violate the Federal Agreement or any federal law or regulation whatsoever including, but not limited to, 23 C.F.R. § 635.117(b).[4]

(Amended Complaint at ¶ A).  In addition, the City demands an injunction enforcing the Memorandum "signed by ODOT as written" and ordering that the City is entitled to be "reimbursed according to the terms of its contractual relationships with ODOT even if it enforces the Lewis Law in contracts and projects funded by the [Memorandum]."  *Id.* at ¶ C.

---

[4] The Court will only examine whether the Lewis Law comports with the laws and regulations the parties have asserted are at issue.

The FHWA became involved when the State of Ohio and ODOT filed their Third-Party

Complaint against FHWA on July 16, 2004 pursuant to the waiver of sovereign immunity in the

Administrative Procedures Act ("APA"), 5 U.S.C. § 702.  (Amended Third Party Cmpl. ¶ 1).

The State asserts that ODOT is "merely a stakeholder in this action" because it only administers

Program funding.  *Id.* at ¶ 9.  As a result, the State contends that "ODOT takes no position on

whether FHWA's application of 23 C.F.R. 635.117(b) to the Lewis Law is correct."  *Id.*  The

State then demands that FHWA be "made to answer and defend against Cleveland's First

Amended Complaint."  *Id.* at ¶ 7.

The FHWA removed the matter on August 24, 2004 pursuant to 28 U.S.C. § § 1441,

1442, and 1446.  (Doc. # 1).  Subsequently, the FHWA filed its Answer.  (Doc.# 13).  The

current motions followed.

## E.     THE STATE AND ODOT HAVE STANDING

Preliminarily, because failure to establish standing is a jurisdictional defect, the Court

must first determine whether the State and ODOT have standing to sue the FHWA.  *See Lewis v.

Casey*, 518 U.S. 343, 349 n.1 (1996); *see also* Doc. # 13 (asserting that the State and ODOT lack

standing) and Doc. # 16 at 12 n.10.

### 1.     Constitutional and prudential requirements for standing

In order to satisfy Article III constitutional standing requirements, "a party must show (1)

actual or threatened injury which is (2) fairly traceable to the challenged action and (3) a

substantial likelihood the relief requested will redress or prevent the plaintiff's injury."  *Adland

v. Russ*, 307 F.3d 471, 477-78 (6th Cir. 2002).  Failure to establish any one of those elements

deprives the Court of jurisdiction to hear the suit.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing restrictions.  *Coyne ex rel. Ohio v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999).  First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth*, 422 U.S. at 499 (citations omitted).  Second, a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens.  *See Valley Forge*, 454 U.S. at 474-75.  Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question.  *See id.*  These additional restrictions enforce the principle that "as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted."  *Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 576 (6th Cir 1991).

### 2.    The Third-Party Plaintiffs satisfy the constitutional requirements for standing

The Court first focuses on the actual or threatened injury prong.  Under this aspect of the analysis, the State and ODOT, as Third-Party Plaintiffs, must demonstrate that they have suffered "an 'injury in fact' that is both concrete and particularized and actual or imminent." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61).

At first glance, the State and ODOT do not appear to have suffered any actual or threatened injury because Cleveland's local funds replenished the withdrawn federal funds for

the Kinsman Road enhancement project. (AR 151). Moreover, the State and ODOT did not lose

any federal funds. *See* 23 U.S.C. § 118(e).[5] However, the Third-Party Plaintiffs can meet the

standing requirements if the suit is brought under the Declaratory Judgment Act by establishing

"actual present harm or a significant possibility of future harm," *Peoples Rights Org. v. City of*

*Columbus*, 152 F.3d 522, 527 (6th Cir. 1998), "even though the injury-in-fact has not yet been

completed." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997).

In the case *sub judice*, the Third-Party Complaint is based on the Declaratory Judgment

Act, 28 U.S.C. § 2201. (Doc. # 9 at ¶ 1). In addition, it is apparent that the Third-Party Plaintiffs

may suffer an injury if the Court issues an Order requiring the State to pay Cleveland the federal

funds from the Kinsman Road enhancement project contract. Were the Court to so rule, the

FHWA correctly contends "the State would be exposed to a court order irreconcilable with the

FHWA's interpretation of its federal statutory and regulatory requirements. FHWA would resist

payment and this would deprive the State of federal funds to which it otherwise would have been

entitled" but for the Court's ruling. (Doc. # 16 at 13 n.10); *see Kozera v. Spirito*, 723 F.2d 1003,

1005-1008 (1st Cir. 1983). As such, the significant potential for a Court Order that is

inconsistent with FHWA's interpretation of its own federal statutory requirements establishes the

threatened injury requirement for the State and ODOT. *See Chief Probation Officers of Cal. v.*

*Shalala*, No. C-95-4644-DLJ, slip op. (N.D. Cal. Mar. 14, 1996) (holding third party plaintiff

---

[5] That section provides:
e) Effect of release of funds. Any Federal-aid highway funds released by the final
payment on a project, or by the modification of the project agreement, shall be credited to
the same program funding category previously apportioned to the State and shall be
immediately available for expenditure.

23 U.S.C.S § 118(e).

had standing under similar circumstances), *aff'd*, 118 F.3d 1327, 1330 (9th Cir. 1997); *Spirito*, 723 F.2d at 1005-1008(discussing possibility of a squeeze play from a potential court order against the state that would conflict with a federal agency's interpretation of its statutory and regulatory requirements).

The second Article III requirement is causation. Clearly, the State and ODOT's threatened injury arises from FHWA's decision to withdraw federal funds from the Kinsman Road enhancement project. If the FHWA had not pulled those funds, then the State and ODOT would not be faced with the possibility of a Court order that is inconsistent with FHWA's interpretation of its own statutes and regulations.

The third prong of the standing inquiry is whether a substantial likelihood the relief requested will redress or prevent the State and ODOT's threatened injury. In their Answer and Third Party Complaint, the State and ODOT assert that Third-Party Defendant FHWA "should be made to answer and defend against Cleveland's First Amended Complaint in this matter as to whether the Lewis Law is in conflict with FHWA regulations, including but not limited to 23 C.F.R. § 635.117(b)." (Doc. # 9). Thus, the Third-Party Plaintiffs' requested relief of making the FHWA a party to the case at bar enables the FHWA to explain its position to the Court and also subjects the FHWA to the Court's authority. The Third-Party Plaintiffs' alleged threatened injury–being squeezed between an agency's interpretation of its own statutes and regulations and a Court Order that is inconsistent with that interpretation–therefore disappears. Consequently, the Court holds that the Third-Party Plaintiffs do have constitutional standing to assert their claims against the State and ODOT as Third-Party Defendants.

     **3.**     **The Third-Party Plaintiffs satisfy the prudential requirements for standing**

To begin, the Court must ensure that the Third-Party Plaintiffs have "assert[ed] [their] own legal rights and interests" and have not rested their claims to relief "on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. That requirement is satisfied here, as the Third-Party Plaintiffs' Memorandum with the FHWA–which details "the extent to which ODOT has assumed the responsibilities of the Secretary [of Transportation]" and allows the Third-Party Plaintiffs to administer federal funds for highway construction projects or to delegate that responsibility to LPAs–establishes the Third-Party Plaintiffs' legitimate interest in the conflict at issue.

Next, the Court holds that the Third-Party Plaintiffs' claim is more than a "generalized grievance" that is pervasively shared by a large class of citizens. *See Valley Forge*, 454 U.S. at 474-75. The issue before the Court is whether a specific local ordinance violates a specific federal statute and a specific federal regulation–thus, no generalized grievance exists here. Furthermore, the FHWA and ODOT are creatures of statute. The statutes that create the FHWA and ODOT establish that the FHWA and ODOT are the exclusive entities responsible for matters involving transportation in their respective spears of operation. Consequently, a federal entity and a state entity are involved in the issue at hand–not a large class of citizens.

Lastly, because this case involves statutory interpretation, the Third-Party Plaintiffs' claim must fall within the "zone of interests" regulated by the statute in question. *See Valley Forge*, 454 U.S. at 474-75. The primary statute involved in the case at bar is 23 U.S.C. § 112 ("§ 112"). That statute describes the bidding requirements for federally-funded transportation contracts that are administered by the FHWA and state transportation departments. The section provides that FHWA, via ODOT "shall require . . . such methods of bidding as shall be effective

13

in securing competition." 23 U.S.C. § 112(a). The statute further provides "Contracts for the construction of each project shall be awarded only on the basis of the lowest responsive bid submitted by a bidder meeting established criteria of responsibility." Clearly, then, the statute limits the methods by which state departments of transportation, including ODOT, award Program contracts. Specifically, those methods must be effective in securing competitive bids. Because the Third-Party Plaintiffs ask the Court to determine whether the Lewis Law violates 23 U.S.C. § 112's competitive bidding requirement by imposing local hiring requirements, the Third-Party Plaintiffs' Complaint falls within the "zone of interests" regulated by 23 U.S.C. § 112.

As such, the Court holds that the Third-Party Plaintiffs have satisfied both the constitutional and prudential requirements for standing.

## STANDARD OF REVIEW

When examining the propriety of a federal agency's action upon a motion for summary judgment, a reviewing Court must base its decision upon both the summary judgment standard of review and the analysis required by the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq*. Thus, the Court will briefly detail both standards.

## I.    SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52). However, in ruling on a motion for summary judgment, "a district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## II.     THE ADMINISTRATIVE PROCEDURES ACT

Administrative actions, such as the FHWA's decision to withdraw federal funds from the Kinsman Road project, are subject to review in this Court by virtue of the APA. The APA gives the district court jurisdiction to review any "final agency action for which there is no other

adequate remedy in a court."  5 U.S.C. § 704.  *Sierra Club v. Pena*, 915 F. Supp. 1381, 1391 (S.D. Ohio 1996);  *Burkholder v. Wykle*, 268 F. Supp. 2d 835, 839-841 (N.D. Ohio 2002). Cases involving judicial review of an administrative decision are disposed of on cross motions for summary judgment.  5 U.S.C. § 706.

Pursuant to the APA, a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § § 706(1) and (2)(A); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 414 (1971); *Village of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970, 972 (10th Cir. 1992).  The Court will find an agency decision to be "arbitrary and capricious" if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Assn. v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43 (1983).

Accordingly, the standard of review for agency determinations is a narrow one–the ultimate question is whether the Record supports the FHWA's decision and not whether a different decision would have been better or might have been made with more information. *Buckingham Twp. v. Wykle*, 157 F. Supp. 2d 457, 466 (D. Pa. 2001).  Agency action is to be afforded a presumption of regularity, and a reviewing court must not "substitute its judgment for that of the agency."  *Overton Park*, 401 U.S. at 415-16; *see also Strycker's Bay Neighborhood Council v. Karlen*, 444 U.S. 223, 227-28 (1980);  *Environmental Defense Fund v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981).  Instead, the Court must look for a "rational connection between

16

the facts found and the choice made" and "consider whether the decision was based upon a consideration of the relevant factors and whether there has been a clear error in judgment." *Motor Vehicle Mfrs. Ass'n*., 463 U.S. at 43 (citation and quotations omitted).  Thus, so long as an agency complies with the procedure mandated by the relevant statutes, and the record supports the choice made, the Court must afford the agency's decision "substantial deference." *Marsh v. Oregon National Resources Council*, 490 U.S. 360, 372 (1989).

Additionally, in determining the propriety of an agency action, the Court should critically examine proffered "post-hoc rationalizations" of the challenged decision, and instead base its decision upon a review of the contemporaneously-created administrative record which has been filed with the Court.  *Overton Park*, 401 U.S. at 419-20 (citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168-69 (1962)); (Doc. # 14).   However, "[a] document need not literally pass before the eyes of the final agency decision-maker to be considered part of the administrative record."  *Clairton Sportsmen's Club v. Pennsylvania Turnpike Comm'n*, 882 F. Supp. 455, 465 (WD Pa. 1995).  Pertinent information upon which administrative decision-makers may have relied may be considered although not included in the record as filed.  *See Higgins v. Kelley*, 574 F.2d 789, 792-793 (3rd Cir. 1978).

Finally, the City, as challenger of the instant decision, bears the burden of proving that the FHWA's action was in error.   *Rosebud Sioux Tribe v. Gover*, 104 F. Supp. 2d 1194, 1207 (D. S.D. 2000); *Township of Belleville v. Federal Transit Admin*., 30 F. Supp. 2d 782, 801 (D. N.J. 1998); *Sierra Club v. U.S. Army Corps of Engineers*, 935 F. Supp. 1556, 1565-66 (S.D. Ala. 1996).

**DISCUSSION**

17

The Court will now examine whether the FHWA's grounds for withdrawing Program funds for the Kinsman Road enhancement project suffice under the standards as elucidated above. Those grounds include: (1) the Lewis Law violates 23 U.S.C. § 112 ("§ 112"); (2) the Lewis Law violates 23 C.F.R. Part 635 ("Part 635"); and (3) 23 U.S.C. § 112 and 23 C.F.R. Part 635 operate to form an exception to the Common Rule, 49 C.F.R. § 18.36 ("Common Rule"). (Doc.# 16 at 16-30). Because the current motions require the Court to review the FHWA's interpretation of § 112, Part 635, and the Common Rule, the Court will first provide a synopsis of *Chevron v. Natural Resources Def. Counsel, Inc.*, 467 U.S. 837 (1984).

## I.  *CHEVRON* ANALYSIS

In *Chevron*, the United States Supreme Court established two questions a Court must ask when reviewing an agency's construction of a statute that it administers. *Id.* at 842. The first is whether Congress has directly spoken to the precise question at issue.   "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-843. If, however, the Court determines that Congress has not directly addressed the specific question at hand, then

> the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 843.

The *Chevron* court also commented on agency regulations. Specifically, the Court noted that the federal agency's authority to administer a statute "necessarily requires the formation of

18

policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress."
*Chevron*, 467 U.S. at 843-844 (citing *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)).  If an explicit
gap exists, then there is "an express delegation of authority to the agency to elucidate a specific
provision of the statute by regulation."  *Id.* at 844.  Such legislative regulations "are given
controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."  *Id.*
 The FHWA's interpretations of its own regulations are entitled to substantial judicial deference
and should be upheld unless they are "plainly erroneous or inconsistent with the regulatory text."
*Carabell v. U.S. Army Corps of Engineers*, 391 F.3d 704, 707 (6th Cir. 2004).

## II.     THE FHWA DID NOT ACT ARBITRARILY OR CAPRICIOUSLY IN DETERMINING THAT THE LEWIS LAW'S LOCAL HIRING REQUIREMENT VIOLATED § 112

Title 23, Section 112 of the United States Code governs the award of construction
contracts that receive federal funding under the Program–like the Kinsman Road contract here.
The FHWA first asserts that the Lewis Law violates § 112.[6]  (Doc. # 16 at 14). The starting point
for determining whether § 112 speaks to the precise question at hand–whether the Lewis Law's
local hiring preferences provision violates § 112's open competitive bidding requirements–is the
statute's text. Entitled "letting of contracts," the section provides in relevant part:

> (a) In all cases where the construction is to be performed by the State
> transportation department or under its supervision, a request for submission of
> bids shall be made by advertisement unless some other method is approved by the
> Secretary. The Secretary shall require such plans and specifications and such
> methods of bidding as shall be effective in securing competition.

---

[6] The City contends that this is the first time the FHWA has asserted § 112 as a basis for
its decision to withdraw funds from the Kinsman Road enhancement project.  (Doc. # 18 at 6).
The record reveals otherwise.  (AR 11, 13, 27-36, 58).

> (b) Bidding requirements.
> (1) In general. Subject to paragraphs (2) and (3), construction of each project, subject to the provisions of subsection (a) of this section, shall be performed by contract awarded by competitive bidding, unless the State transportation department demonstrates, to the satisfaction of the Secretary, that some other method is more cost effective or that an emergency exists. Contracts for the construction of each project shall be awarded only on the basis of the lowest responsive bid submitted by a bidder meeting established criteria of responsibility. No requirement or obligation shall be imposed as a condition precedent to the award of a contract to such bidder for a project or to the Secretary's concurrence in the award of a contract to such bidder, unless such requirement or obligation is otherwise lawful and is specifically set forth in the advertised specifications.

Both parties agree that the intent of Congress in enacting § 112 is clear and unambiguous.  (Doc. # 16 at 16; Doc. # 18 at 6).  That is, Congress intended to ensure that construction contracts be awarded to the lowest bidder through a process of competitive bidding free of impeding restrictions and requirements in order to utilize the money of taxpayers in the most economical manner.

The Court concurs with the parties that Congress' intent in enacting § 112 is unambiguous for several reasons.  To begin, § 112(a) instructs the Secretary to "require such plans and specifications as shall be effective in securing competition."  Second, Section 112(b)(1) mandates that construction of each project "be performed by contract awarded by competitive bidding."  Third, that same section directs that construction contracts be "awarded only on the basis of the lowest responsive bid submitted by a bidder meeting established criteria of responsibility."  Lastly, the statute provides "no requirement or obligation shall be imposed as a condition precedent to the award of a contract to such bidder for a project . . . unless such requirement is otherwise lawful and is specifically set forth in the advertised specifications."  23

20

U.S.C. § 112(b)(1).  This language uneqivicolately  states Congress' intent that highway construction contracts be awarded in an environment of free and open competition.  As a result, the Court need not conduct the second step of the *Chevron* analysis.

Because the intent of Congress is clear, and giving the FHWA's intepretation the substantial deference it is due, the Court holds that the FHWA's act of withdrawing Program funding from the Kinsman Road enhancement project is neither arbitrary nor capricious for several reasons.  First, the FHWA must "require such plans and specifications as shall be effective in securing competition."  23 U.S.C. § 112(a).  The City's Lewis Law acts as a specification that discourages competitive bidding because of its local preference requirement.  To illustrate, a qualified contractor who may have the lowest bid may not elect to participate in the process because the contractor believes that he would be unable to satisfy the twenty (20) percent requirement.  Additionally, a qualified contractor may elect not to place a bid because of the prohibitive penalties that the Lewis Law imposes.  Or, a qualified contractor may elect not to participate in the bidding process due to unfamiliarity with the Cleveland labor market.  As such, the Court concludes that the Lewis Law's local hiring provision violates § 112(a).

Although an exception to competitive bidding requirement exists, the City has not attempted to satisfy it.  Specifically, the City failed to even attempt to demonstrate to the Secretary's satisfaction that its method is more "cost effective" than competitive bidding or that an emergency existed.  *Id.* at § 112(b)(1).  The City argues that because the Lewis Law does not proscribe the use of competitive bidding, the City is under no obligation to justify the law as being more cost effective.  (Doc. # 18 at 7).  This argument misses the mark by ignoring the effect of the Lewis Law on the competitive bidding process.  In essence, the Ordinance operates

to discourage all potentially qualified bidders from bidding for fear of not being able to comply with the Law's local hiring requirement.  *See*  § 112(a).  For that same reason, the Court finds the City's assertion that because it does not consider a "contractor's potential compliance with the Lewis Law provisions" when evaluating bids, the Ordinance does not alter the competitive bidding process.  (Doc. # 18 at 8-9).   The City's focus is again misplaced.  Instead of concentrating on the City's knowledge of a contractor's compliance, the proper analysis centers on the contractor's knowledge of the Lewis Law's local hiring requirement and concomitant penalties.  That is, because the Lewis Law may operate to prevent contractors from placing bids due to the hiring requirement and related penalties, the actual bid selection process may not be competitive.

The FHWA also did not act arbitrarily and capriciously in determining that the Lewis Law violates § 112(b)(1)'s requirement that highway construction contracts be awarded "only on the basis of the lowest responsive bidder."  The Lewis Law's local hiring requirement essentially operates to make highway contracts in Cleveland be awarded on the basis of the Contractor's willingness and ability to conform to the Ordinance's local hiring requirement–not on the basis of being the lowest responsive bidder.  Simply stated, the actual lowest responsive bidder could have been a contractor that would have submitted the lowest bid, but elected not to because of the Lewis Law's local preference requirement.  Moreover, the Ordinance's local hiring requirement imposes a condition on a contractor that has nothing to do with the contractor's ability to complete the project in a safe and responsible manner.

In response, the City argues that the local preference requirement is akin to other requirements that are placed on contractors–nondiscrimination, wage and hour, and

environmental laws.  (Doc. # 18 at 8).  Again, the City's argument is without merit because, as the FHWA points out, those requirements are rooted in federal statutes.  (Doc. # 21 at 8) (citing 23 U.S.C. § 140 (nondiscrimination); 23 U.S.C. § 113 (prevailing wage); 23 U.S.C. § 149 (environmental compliance)).

Finally, § 112  provides "no requirement or obligation shall be imposed as a condition precedent to the award of a contract to such bidder for a project . . . unless such requirement is otherwise lawful and is specifically set forth in the advertised specifications."  23 U.S.C. § 112(b)(1).  The Lewis Law's local hiring requirement essentially operates as a condition precedent because it requires contractors who utilize Ohio laborers to ensure that twenty (20) percent of those workers are Cleveland residents.  In addition, the Court held above that the Lewis Law's local preference requirement is unlawful under § 112(a).  Consequently, the Court determines that the FHWA acted reasonably and not arbitrarily and capriciously in determining that the Lewis Law's local preference provision violated § 112.

## III.    THE FHWA DID NOT ACT ARBITRARILY AND CAPRICIOUSLY IN DETERMINING THAT THE LEWIS LAW'S LOCAL HIRING REQUIREMENT VIOLATED 23 C.F.R. PART 635, SUBPART A

The FHWA also posits that the Lewis Law's local hiring requirement violates the FHWA's implementing regulations found in 23 C.F.R. Part 635, Subpart A.  (AR 5, 7, 96, 141).

Those regulations apply to all Federal-aid highway projects, and prohibit requirements that would undermine § 112's competitive contracting requirements.  Unsurprisingly, the City responds by contending that the Lewis Law's requirements are consistent with the regulations. (Doc. # 18 at 11).

      **A.**      **23 C.F.R. § 635.110(b)**

The first regulation at issue is found at 23 C.F.R. § 635.110(b).  That regulation states:

> (b) No procedure or requirement for bonding, insurance, prequalification, qualification, or licensing of contractors shall be approved which, in the judgment of the Division Administrator, *may* operate to restrict competition, to prevent submission of a bid by, or to prohibit the consideration of a bid submitted by, any responsible contractor, whether resident or nonresident of the State wherein the work is to be performed.

23 C.F.R. § 635.110(b) (Emphasis added).  The Lewis Law's penalty provision allows the City to punish a violating contractor–for up to five (5) years after the violation–by imposing a bonding requirement of twenty (20) percent of the contract price for any subsequent contract awarded to the contractor. CCO § 188.05(h).

The FHWA argues that the Lewis Law's local hiring requirement and parallel penalty provision violate § 635.110(b) for two reasons.  First, the Administration asserts that the Ordinance's local hiring requirement results in a local contracting preference because local contractors are familiar with the local labor market and enforcement procedures.   (Doc. # 16 at 29).  Thus, local contractors would not have to budget for finding local residents to employ when submitting their bid, which would result in bids that are lower than non-local contractors because non-local contractors who are not familiar with Cleveland's labor market would have to include

contingencies in their bids for: (1) the costs of locating, training, and employing City residents; (2) potential delays resulting from the uncertainty of whether the Director will, under CCO § 188.03(b), reduce the minimum percentage of resident employment required by the Ordinance; (3) penalties for not achieving the twenty (20) percent mandate; and (4) the long term costs associated with the bonding penalty should the City elect to enforce it. (Doc. # 16 at 29). Second, the FHWA maintains that the bonding requirement may operate to prevent some contractors from placing bids; therefore, the requirement violates § 635.110(b) because it may operate to restrict competition.  The City's lone argument in opposition is that the Lewis Law does not "impose any procedures or requirements for bonding."  (Doc. # 18 at 13).  Both of the FHWA's arguments are well-taken while the City's assertion is without merit.

To begin, the regulation only prohibits bonding procedures or requirements that *may* operate to restrict competition or that *may* operate to prevent submission of a bid..  Obviously, local contractors enjoy a familiarly with, and knowledge of, the local labor market that non-local contractors do not.  As a result, because non-local contractors who place bids may be forced to include contingencies in their bids for the Lewis Law's local hiring requirement, their bids may not be competitive with the bids of local contractors who are not faced with such contingencies. Therefore, because the Lewis Law's local hiring requirement *may* operate to restrict competition, the Court concludes that the FHWA's decision to pull funding for the Kinsman Road enhancement project was reasonable and was not plainly erroneous or inconsistent with the regulatory text.  *Carabell*, 391 F.3d at 707.

The FHWA's second argument buttresses the Court's conclusion.  In particular, the FHWA maintains that the bonding requirement may operate to prevent some contractors from

25

placing bids; therefore, the requirement violates § 635.110(b) because it may operate to restrict competition.  The FHWA's argument is logical because some contractors may not place bids if they determine that the Ordinance's bonding penalty is too severe.  As a result, because the Lewis Law *may* operate to prevent submission of a bid by a responsible contractor, the FHWA's decision to withdraw federal funds from the Kinsman Road project was neither plainly erroneous nor inconsistent with the regulatory text.

The City's lone argument in opposition is that the Lewis Law does not "impose any procedures or requirements for bonding."  (Doc. # 18 at 13).  The clear language of Cleveland Ordinance § 188.05(h) does impose bonding "procedures or requirements" if the contractor violates the Lewis Law.  Accordingly, the City's argument is not well taken.

### B.      23 C.F.R. § 635.112(d)

The FHWA next argues that the Lewis Law violates 23 C.F.R. § 635.112(d).  (Doc. # 16 at 30; Doc. # 21 at 16).  In particular, the FHWA asserts that the Lewis Law's local hiring provision "discriminates against contractors based on their ability to hire local labor" because "Contractors who can hire Cleveland labor are more likely to be from Cleveland."  (Doc. # 16 at 30; Doc. # 21 at 16).  The City contends that the Ordinance does not discriminate against bidders on the basis of local boundaries.  (Doc. # 18 at 13).   Rather, the City maintains that the Lewis Law permissibly discriminates only against Ohio residents who do not live in Cleveland.  *Id.* Stated differently, the City argues that § 635.112(d) prohibits discrimination against bidders on the basis of local boundaries but does not prohibit discrimination against workers on the basis of local boundaries.

The regulation at issue provides "Nondiscriminatory bidding procedures shall be afforded

26

to all qualified bidders regardless of National, State or local boundaries and without regard to race, color, religion, sex, national origin, age, or handicap." 23 C.F.R. § 635.112(d).  Given that phrasing, the Court finds the FHWA's interpretation to be too expansive given the clarity of the statute's language.  Essentially, FHWA relies on the potential *effect* of the Lewis Law's provision–Cleveland contractors are more likely to place the lowest bid than non-Cleveland contractors–to argue that the Ordinance operates to create a discriminatory bidding *procedure*. However,  § 635.112(d) speaks only in terms of bidding procedures, not in terms of the effects of those procedures.   Bidding procedures, of course, refer only to the actual process involved in placing bids.  Consequently, a canon of statutory interpretation becomes relevant.  "Under . . . expressio unius est exclusio alterius, the mention of one thing implies the exclusion of another." *Grenitz v. Tomlian*, 858 So. 2d 999, 1002 (Fla. 2003).  The canon, however, has force only when the items expressed are members of an "associated group or series," justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (U.S. 2003)

Sections 635.110(b), 635.112(d), and 635.117(b) are all regulations that pertain to the administration of highway construction contracts.  Thus, they are part of an "associated group or series." *Barnhart*, 537 U.S. at 168.  Section 635.110(b) addresses the issue of effects by prohibiting certain procedures or requirements that *may* operate to: (1) restrict competition or (2) prevent submission of a bid by any responsible contractor.  Section 635.117(b) states "[n]o procedures or requirement shall be imposed by any State which *will operate to discriminate* against the employment of labor from any other State, possession or territory of the United States, in the construction of a Federal-aid project."  (Emphasis added).  Therefore that section

27

addresses the issue of effects as well.  Section 635.112(d), however, fails to discuss effects.  As a result, the FHWA's decision to include language pertaining to effect in § § 635.110(b) and 635.117(b) but to exclude similar language in § 635.112(d) prohibits the Court from accepting the FHWA's broad reading of § 635.112(d).

### C.      23 C.F.R. § 635.117(b)

The third and final regulation at issue is 23 C.F.R. § 635.117(b).  As noted above, that section states "[n]o procedures or requirement shall be imposed by any State which will operate to discriminate against the employment of labor from any other State, possession or territory of the United States, in the construction of a Federal-aid project."  The City maintains that the Ordinance is consistent with § 635.117(b) because it does not discriminate against out of state labor.  (Doc. # 18 at 13-14).  In so arguing, the City implicitly admits that the Lewis Law allows intrastate discrimination against non-Cleveland residents.

This Court previously held "economical use of public funds for highway construction is one of the express interests recognized by the Highway Act."  *Citizens Organized to Defend Environment v. Volpe*, 353 F. Supp. 520, 526 (S.D. Ohio 1972).  Section 635.117(b) is a regulation that implements the Highway Act.  It is axiomatic that discrimination, whether interstate or intrastate, prohibits open competition which is the goal of § 112.  Thus, the City's argument is unpersuasive.  The Court concludes that the FHWA's action of  pulling the federal funding for the Kinsman Road project under § 635.117(b) was not plain error.

## IV.      THE COMMON RULE DOES NOT APPLY

Finally, the City contends that the Lewis Law is consistent with the Common Rule found in 49 C.F.R. § 18.36.  (Doc. # 23 at 6-7; Doc. # 18 at 14).  In response, the FHWA asserts that 49 C.F.R. § 18.37 is the proper regulation at issue and that 23 U.S.C. § 112 and its implementing

regulations "form an exception to the Common Rule."  (Doc. # 16 at 30-32; Doc. # 21 at 18-19).
The FHWA's contentions prevail.

The Department of Transportation's ("DOT") rule at 49 C.F.R. §18.36 is known as the
"Common Rule" for procuring property and services under grants of federal funds.  (Doc. # 16 at
31).  The Common Rule establishes uniformity among various Federal agencies in the
administration of federal grants to state and local governments.  Uniform Administrative
Requirements for Grants and Cooperative Agreements to State and Local Governments
("UAR"), 53 Fed. Reg. 8034, 8034-8035 (March 11, 1988); 53 Fed. Reg. 8084, 8088 (March 11,
1998).[7]  Simply stated, the Common Rule allows states to spend federal funds using the state-
specific procurement rules states utilize for non-federal funds.  *Id.* at 8035.  According to the
City, the Common Rule allows the City to enforce the Lewis Law when accepting bids and
entering into contracts for road construction projects.  (Doc. # 18 at 14).

As a result of the federal funding procedure outlined above, the City was a subgrantee for
the Kinsman Road enhancement project.   Accordingly, 49 C.F.R. § 18.37 governs the City's

---

[7] The DOT's Common Rule provides:

States. When procuring property and services under a grant, a State will
follow the same policies and procedures it uses for procurements from its non-
Federal funds. The State will ensure that every purchase order or other contract
includes any clauses required by Federal statutes and executive orders and their
implementing regulations. Other grantees and subgrantees will follow paragraphs
(b) through (i) in this section.

(b) Procurement standards. (1) Grantees and subgrantees will use their own
procurement procedures which reflect applicable State and local laws and
regulations, provided that the procurements conform to applicable Federal law
and the standards identified in this section.

49 C.F.R § 18.36.

contract.  That rule states in pertinent part:

> (a) States. States shall follow state law and procedures when awarding and administering subgrants (whether on a cost reimbursement or fixed amount basis) of financial assistance to local and Indian tribal governments. States shall:
>
> (1) Ensure that every subgrant includes any clauses required by Federal statute and executive orders and their implementing regulations;
>
> (2) Ensure that subgrantees are aware of requirements imposed upon them by Federal statute and regulation;

49 C.F.R. § 18.37.  The rule's plain language requires the State and ODOT to ensure that the City abides by pertinent federal contracting requirements.

As the FHWA correctly notes, the City has conceded that 23 U.S.C. § 112 and its implementing regulations found at 23 C.F.R. 635, Subpart A are applicable to this case by arguing that the Lewis Law is consistent with that statute and those regulations. (Doc. # 21 at 19).

In addition, the Court held above that the FHWA acted reasonably by determining that the Lewis Law violated 23 U.S.C. § 112 and the statute's implementing regulations at 23 C.F.R. Part 635, Subpart A, § § 635.110(b) and 635.117(b).  Because Rule 18.37 requires that the State and ODOT ensure that the City abides by 23 U.S.C. § 112 as well as its implementing regulations, and because the Lewis Law violates that statute and those regulations, the Court concludes that the Common Rule is inapplicable.  Consequently, the Court holds that the FHWA's decision that the Common Rule did not apply was not plain error.

## CONCLUSION

The FHWA's motion for summary judgment (Doc. # 16) is **GRANTED**.  The City's

motion for summary judgment (Doc. # 18) is **DENIED**.

The City, the State, and ODOT shall file a document with the Clerk within ten (10) business days of this Order informing the Court as to the status of the City's remaining claims against those Defendants.

**IT IS SO ORDERED.**


  /s/  **Gregory L. Frost**                     
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**